UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-131-MOC

| | |
|---|---|
| DIANA CORONA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary

Judgment. (Doc. Nos. 12, 15). Plaintiff Diana Corona brought this action, pursuant to 42 U.S.C.

§ 405(g), seeking review of Defendant's denial of Plaintiff's applications for disability benefits

and supplemental security income. Having carefully considered such motions and reviewed the

pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

Plaintiff seeks judicial review of the Social Security Administration's (Agency's)

decision denying her June 6, 2019, application for a period of disability and Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II & XVI of the

Act, 42 U.S.C. § 423(a), alleging disability beginning February 1, 2015. (Tr. 17). Plaintiff was

last insured (DLI) for Title II benefits on March 31, 2020. (Tr. 20, Finding 1). Plaintiff

subsequently amended her alleged onset date to June 6, 2019. (Tr. 17). An administrative hearing

was held on October 20, 2021. (Id.). The ALJ issued a denial decision on December 16, 2021.

(Tr. 17–35). The agency's Appeals Council (AC) denied review of this decision on July 20, 2022, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–8).

Plaintiff was awarded a closed period of disability on February 9, 2017 (Tr. 70–82) from May 12, 2013, to January 16, 2015, with agreement from Plaintiff's counsel. (Tr. 71). In that decision, the prior ALJ found Plaintiff's fibromyalgia was a severe impairment. (Tr. 75, Finding 3). In reviewing the prior closed period awarded by agreement, the current ALJ applied the Social Security Acquiescence Ruling 00-1(4), Albright v. Comm'r, 174 F.3d 473 (4th Cir. 1999). (Tr. 27). Plaintiff's current disability applications were filed over four years from the end date of the prior closed period and over two years from the date of the closed period adjudication. Despite this, Plaintiff now alleges an amended disability onset beginning June 6, 2019, again due to fibromyalgia a little over two years following a stipulation of disability cessation on February 9, 2017.

The Court has jurisdiction of the current applications pursuant to 42 U.S.C. § 405(g). Having exhausted her administrative remedies, plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV.    Substantial Evidence

### a.  Introduction

The Court has reviewed the transcript of Plaintiff's administrative hearing, the decision of the ALJ, and the relevant exhibits contained in the extensive administrative record. The issue is whether the decision of the ALJ is supported by substantial evidence, not whether the Court might have reached a different conclusion had it been presented with the same testimony and

-3-

evidentiary materials. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. For the purposes of Title II of the Act, "disability" means "the inability to do any substantial gainful activity [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To qualify for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act, insured status is not an eligibility factor. However, income and resources are a factor.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

-4-

d.  If, upon determining residual functional capacity, the Commissioner finds that an

individual is capable of performing work he or she has done in the past, a finding of

"not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work,

other factors including age, education, and past work experience must be considered

to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the

inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth

step, the burden shifts to the Commissioner to show that other work exists in the national

economy that the claimant can perform. Id.

### c.  The Administrative Decision

The ALJ followed the five-step sequential evaluation in the analysis of Plaintiff's alleged

disability. See 20 C.F.R. § 416.920(a). The ALJ found Plaintiff had the following severe

impairments: cervical radiculopathy, lumbar spondylosis, fibromyalgia, neuropathy, obesity, a

major depressive disorder, an anxiety disorder, bipolar disorder, and post-traumatic stress

disorder. (Tr. 20, Finding 3).

The ALJ pointed out that a March 2021 MRI revealed only mild annular bulging at L3-4

and L4-5, as well as mild facet arthrosis and mild bilateral lateral sesamoids stenosis at L4-5, but

no spinal canal stenosis and no neuroforaminal stenosis. (Tr. 21). At L5-S1, the MRI showed

mild to moderate facet arthrosis and mild bilateral lateral sesamoids stenosis, but no spinal canal

stenosis and no neuroforaminal stenosis. (Id.).

The ALJ also pointed out that Plaintiff's excess weight aggravates her musculoskeletal

pain and limits her ability to perform strenuous activities such as heavy lifting. (Id.). Further, the

ALJ noted that on January 15, 2019, at Catawba Valley Behavioral Health, Plaintiff responded, "I'm good at anything I do. I'm a quick learner. I was a good picker when I worked." (Id.).

However, at the administrative hearing, Plaintiff alleged she is not able to work because of fibromyalgia and neuropathy in her hands and feet, and when she has a flare of her fibromyalgia, she has pain so badly she does not get out of bed. (Tr. 26). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Id.).

The ALJ further found, citing Social Security Ruling (SSR) 12-2p, that Plaintiff's fibromyalgia does not meet or medically equal the criteria of any of the listed neurological impairments in Section 11.00 of 20 CFR Part 404, Subpart P, Appendix 1; nor does Plaintiff's condition definitively meet either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia. (Tr. 23). Regarding the 1990 criteria, the ALJ observed that Plaintiff's "condition does not result in a history of widespread pain that has persisted for at least 3 months." (Id.). As to the 2010 criteria, the ALJ observed that Plaintiff's condition also did not "result in a history of widespread pain that has persisted for at least 3 months, with repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, (especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, an anxiety disorder, or irritable bowel syndrome)". (Id.). Also, the ALJ noted (Tr. 26) that at the hearing Plaintiff testified that Cymbalta "helps keep my fibromyalgia calm." (Tr. 51). She explained that this medication helps with the flareups and that it also as to her neuropathy it "helps keep that at bay." (Id.).

On February 11, 2020, consultative examiner Dr. Aregal A. Girmay reported that Plaintiff does the cooking and, with her daughter's help, she also does vacuuming and mopping. (Tr. 668). The examiner noted Plaintiff was able to ambulate without an assistive and was able to put on and take off her shoes, and sit and stand without using her arms. (Tr. 669). Dr. Girmay opined that Plaintiff "can walk 100 feet without difficulty." (Tr. 671).

Furthermore, the ALJ noted that a June 26, 2019, Third-Party Function Report made by Plaintiff's grandmother, Thelma Shoup, revealed that Plaintiff is able to drive a car and manage her personal finances, and that her hobbies include reading. (Tr. 23). Ms. Shoup also reported that Plaintiff leaves home unaccompanied, goes shopping, socializes with others daily by telephone, and attends church every Sunday. (Tr. 23, 308). Plaintiff's grandmother reported she has known Plaintiff all of Plaintiff's life. (Tr. 308). Ms. Shoup reported Plaintiff feeds house pets morning and night (Tr. 309), prepares her own meals, does cleaning and laundry (Tr. 310), and is able to handle bank accounts. (Tr. 311–12). She is short of money since her husband left. (Id.). She is fearful since her husband left. (Tr. 314). She does not need anyone to accompany her when she leaves home. (Tr. 312). As to how far Plaintiff can walk before needing to stop, Ms. Shoup indicated the question was not applicable to Plaintiff and neither was the question of how long Plaintiff needs to rest before resuming walking. (Tr. 313).

The ALJ further found that Plaintiff had the residual functional capacity (RFC)[1] to perform a restricted range of light work limited by occasional climbing of ramps and stairs, and no climbing ladders, ropes, or scaffolds. (Tr. 25, Finding 5). Plaintiff is further limited to only frequent balancing, kneeling, and crouching and to only occasional stooping and crawling. (Id.).

---

[1] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

Further, she is limited to only occasional use of her bilateral upper extremities for overhead reaching and to only frequent handing and fingering. (Id.). She must avoid working at unprotected heights. (Id.). Non-exertionally, she is limited to jobs performing unskilled work consisting of routine tasks performed in a stable work environment, meaning an environment with few and infrequent changes to the work routine. (Id.). She is further limited to only occasional interaction with supervisors, coworkers, and the public. (Id.). Lastly, the ALJ found Plaintiff is able to maintain concentration, persistence, and pace for two-hour periods during the workday. (Id.). The ALJ further noted that Plaintiff has a grade school education and was 49 years old at the time of the hearing. (Tr. 26). She had past relevant work as an order picker and hand sander, both of which jobs she described as medium in exertion. (Tr. 33).

With the assistance of the hearing's vocational expert (VE), the ALJ denied benefits at Step 5 of the sequential evaluation (discussed below) based on Plaintiff's ability to perform work which exists in significant numbers in the national economy, described as the unskilled light exertional jobs of routing clerk, marker, and inspector. (Tr. 33–34, Finding 10).

**V.      Discussion**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because (1) the ALJ improperly evaluated plaintiff's fibromyalgia and (2) in doing so improperly analyzed plaintiff's activities of daily living. However, as discussed below, this argument does not present a basis for remand because the ALJ's RFC is supported by substantial evidence.

Furthermore, as mentioned, Plaintiff was previously awarded a closed period of disability from May 12, 2013, through January 16, 2015, by consent of counsel in an ALJ decision dated February 9, 2017. At that time, Plaintiff acknowledged that her medical condition had improved and that her disability had ended on January 16, 2015, and that she was not under a disability at

the time of the previous decision. (Tr. 71). That decision, which included severe alleged

fibromyalgia (Tr. 75), remains final and binding with regard to the period through February 9,

2017, and was expressly not reopened in the current decision. (Tr. 17). Plaintiff is again alleging

disabling fibromyalgia just two years after stipulating that this alleged condition was no longer

disabling.

As noted, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a

restricted range of light exertional work limited by occasional climbing of ramps and stairs, and

no climbing of ladders, ropes, or scaffolds, (Tr. 25, Finding 5). Plaintiff is further limited to only

frequent balancing, kneeling, and crouching and to only occasional stooping and crawling. (Id.).

Further, she is limited to only occasional use of her bilateral upper extremities for overhead

reaching and to only frequent handing and fingering. (Id.). She must avoid working at

unprotected heights. (Id.). Non-exertionally, she is limited to jobs performing unskilled work

consisting of routine tasks performed in a stable work environment, meaning an environment

with few and infrequent changes to the work routine. (Id.). She is further limited to only

occasional interaction with supervisors, coworkers, and the public. (Id.). Lastly, the ALJ found

Plaintiff is able to maintain concentration, persistence, and pace for two-hour periods during the

workday. (Id.).

This RFC has substantial evidentiary support. As noted, substantial evidence means

"more than a mere scintilla" but somewhat less than a preponderance. Richardson v. Perales, 402

U.S. 389, 401 (1971). Therefore, the existence of even a preponderance of contrary medical and

psychological evidence is insufficient to defeat the ALJ's RFC, which in this case is supported

by much more than a scintilla of evidence as discussed below. Furthermore, "the substantial

evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go

either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272–73 (8th Cir. 1988)).

The Court further finds that the opinions of state agency medical consultants support the RFC. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 26). In this regard, the state agency medical consultants support the ALJ's RFC and the ALJ found their opinions to be "very persuasive." (Tr. 32).

First, as to the non-examining state agency physicians, the ALJ noted that state agency physicians concluded that Plaintiff can sit, stand, or walk for about six hours in a workday; can push and pull, lift and carry 20 pounds occasionally and 10 pounds frequently; has some postural and manipulative limitations; and has no visual, communicative, or environmental limitations. (Id.). The ALJ further noted that state agency medical consultants found Plaintiff capable of performing simple, unskilled tasks and to maintain attention and concentration for two-hour segments throughout the workday; able to respond to supervisors, co-workers, and usual work situations; and able to be aware of normal hazards and take appropriate precautions. Id. See Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

As to the examining state agency physician, on February 11, 2020, consultative examiner Dr. Aregal A. Girmay reported that Plaintiff does the cooking and with her daughter's help she also does vacuuming and mopping. (Tr. 668). The examiner noted Plaintiff was able to ambulate

without an assistive and able to put on and take off her shoes and sit and stand without using her arms. (Tr. 669). Dr. Girmay opined that Plaintiff "can walk 100 feet without difficulty." (Tr. 671). Again, Dr. Girmay's assessment supports the ALJ's RFC finding.

Next, as to Plaintiff's fibromyalgia and Plaintiff's ability to perform daily activities, in assessing Plaintiff's complaints of fibromyalgia, the ALJ "considered the third-party function report of the claimant's grandmother, Thelma Shoup, in assessing the daily activities in which the claimant can engage, as observed by Ms. Shoup." (Tr. 32). The ALJ noted that in her June 26, 2019, Third-Party Function Report, Ms. Shoup, who has known Plaintiff for Plaintiff's entire life, revealed that Plaintiff is able to drive a car and manage her personal finances, and that her hobbies include reading. (Tr. 23). Ms. Shoup also reported that Plaintiff leaves home unaccompanied, goes shopping, socializes with others on a daily basis by telephone, and attends church every Sunday. (Tr. 23, 308). Ms. Shoup reported Plaintiff feeds house pets morning and night (Tr. 309), prepares her own meals, does cleaning and laundry (Tr. 310), and is able to handle bank accounts. (Tr. 311–12). She is short of money since her husband left. (Id.). She is fearful since her husband left. (Tr. 314). She does not need anyone to accompany her when she leaves home. (Tr. 312). As to how far Plaintiff can walk before needing to stop, Ms. Shoup indicated the question was not applicable to Plaintiff, nor was the question about how long she needs to rest before resuming walking. (Tr. 313).

In Arakas v. Commissioner, 983 F.3d 83, 95–96 (4th Cir. 2020) the Fourth Circuit found that because "fibromyalgia typically [does] not produce clinical and laboratory abnormalities," the ALJ erred by "effectively require[ing] objective evidence for a disease that eludes such measurement." Here, unlike in Arakas, the ALJ also considered Plaintiff's daily activities as reported by her grandmother. The ALJ found plaintiff's fibromyalgia to be a severe impairment

(Tr. 20, Finding 3) based on the diagnosis of Dr. Girmay. (Tr. 21). Even so, the ALJ pointed out, citing Social Security Ruling (SSR) 12-2p, that Plaintiff's fibromyalgia does not meet or medically equal the criteria of any of the listed neurological impairments in Section 11.00 of 20 CFR Part 404, Subpart P, Appendix 1; nor does Plaintiff's condition definitively meet either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia. (Tr. 23). Regarding the 1990 criteria, the ALJ observed that Plaintiff's "condition does not result in a history of widespread pain that has persisted for at least 3 months." (Id.). As to the 2010 criteria, the ALJ observed that Plaintiff's condition also did not "result in a history of widespread pain that has persisted for at least 3 months, with repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, (especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, an anxiety disorder, or irritable bowel syndrome)." (Id.).

The fact that the ALJ also referenced objective evidence when discussing fibromyalgia does not violate Arakas. While the ALJ cannot discount Plaintiff's subjective complaints based on objective medical evidence (or lack thereof), he can "substantiat[e] the claimant's impairment" with that evidence. Arakas at 97–98. Here the ALJ found that Plaintiff's fibromyalgia was still a severe impairment. Even so, the ALJ correctly noted that the most recent record in September 1, 2021, of a visit to her primary care providers reflects that Plaintiff again denied experiencing any neck pain, neck muscle tightness, neck stiffness, and any "cracking sensation" or muscle spasms in the neck, and again denied experiencing any finger joint stiffness, back pain, or any other muscle aches or arthralgias. (Tr. 28). The ALJ properly concluded that Plaintiff's ability to perform "a wide range of daily activity" contradicts her

-12-

allegations of disability. (Tr. 31). The ALJ also noted (Tr. 26) that, at the hearing, Plaintiff

testified that Cymbalta "helps keep my fibromyalgia calm." (Tr. 51). Plaintiff explained that this

medication helps with the flareups and that it also "helps keep [her neuropathy] at bay." (Id.). As

stated in Gross v. Heckler, 755 F.2d 1163, 1166 (4th Cir. 1986), "[i]f a symptom can be

reasonably controlled by medication or treatment, it is not disabling."

In sum, and based on the evidence before the ALJ, the Court agrees with Defendant that

the ALJ's findings as to Plaintiff's physical and mental RFC have substantial evidentiary

support, and the Court will therefore affirm the decision of the Commissioner.

## VI.    Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the

proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's

assignments of error. Review of the entire record reveals that the decision of the ALJ is

supported by substantial evidence. Finding that there was "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401,

Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for

Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 12) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 15) is **GRANTED**; and

(4) This action is **DISMISSED.**

Signed: April 26, 2023

Max O. Cogburn Jr.
United States District Judge

-14-